IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs August 25, 2020

**STATE OF TENNESSEE v. ADRIAN WAITE**

**Appeal from the Criminal Court for Hamilton County**
**Nos. 303750, 303754          Tom Greenholtz, Judge**

_____

**No. E2019-02017-CCA-R3-CD**

_____

The Defendant appeals as of right from the Hamilton County Criminal Court's revocation of his probation and reinstatement of the remainder of his three-year sentence for one count each of theft of property valued at more than $1,000 but less than $2,500 and forgery in the same amount. On appeal, the Defendant asserts that the trial court abused its discretion by revoking his probation because: (1) the Defendant remained actively employed and made efforts to contact his probation officer; (2) the Defendant's probation revocation "robbed victims of owed restitution and imposed an unnecessary financial burden upon the state's taxpayers"; (3) the Defendant's probation revocation "runs contrary to the Governor's stated desire to use alternatives to incarceration for low-level, nonviolent offenders"; and (4) the Defendant's probation revocation does "not reflect the trial court's expectation that [he] would be released soon after his revocation hearing." Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Steve E. Smith, District Public Defender; Jessica Fay Butler, Assistant Public Defender (on appeal); and Kevin L. Loper, Assistant Public Defender (at revocation hearing), for the appellant, Adrian Waite.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; and Neal Pinkston, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## FACTUAL BACKGROUND

On May 10, 2018, the Defendant pled guilty to one count of theft of property valued at more than $1,000 but less than $2,500 and one count of forgery in the same amount. See Tenn. Code Ann. §§ 39-14-103, -114. In exchange for his plea, the Defendant received a two-year sentence on the theft count and a one-year sentence on the forgery count, to be served consecutively, for a total effective sentence of three years as a Range 1, standard offender to be served on probation. Additionally, the Defendant was ordered to pay $881.50 in restitution in monthly installments of $50.

Thereafter, the State filed a violation of probation affidavit and warrant on January 11, 2019, alleging that the Defendant violated the conditions of his probation by (1) failing to obey the law as a result of his January 4, 2019 arrest for aggravated sexual battery, indecent exposure, and aggravated criminal trespass; (2) failing to report the January 4, 2019 arrest to his probation officer; (3) failing to provide a verifiable home address; (4) absconding from supervision and failure to attend Victim Impact classes; (5) failing to pay required fees to the Supervision and Criminal Injuries fund; (6) failing to pay restitution; and (7) engaging in assaultive, abusive, and threatening behavior, as evidenced by his January 4, 2019 arrest for aggravated sexual battery. The Defendant's charges of aggravated sexual battery, indecent exposure, and aggravated criminal trespass were dismissed prior to the revocation hearing.

At the October 30, 2019 revocation hearing, Christina Barnes testified that she was a probation and parole officer for the Tennessee Department of Correction. Ms. Barnes stated that she was not the Defendant's probation officer but that she had reviewed the Defendant's file. According to the file, the Defendant had last reported for probation in June 2018, at which time he noted that he was homeless. Ms. Barnes testified that the Defendant's next report date was sometime in December 2018, but that the Defendant was not given a specific date. Ms. Barnes stated that the file contained a note describing a telephone call the probation officer made to Chattanooga Community Kitchen, where the Defendant reported he resided; however, a contact at the Kitchen "stated they were familiar with [the Defendant,] but they had not seen him lately."

Chattanooga Police Sergeant Kyle Moses testified that on January 4, 2019, he responded to a burglary alarm at the Bessie Smith Cultural Center in the early morning hours and came into contact with the Defendant. Sergeant Moses stated that he heard screams upon approaching and that looking down a stairwell at the rear of the building, he saw the nude Defendant with a woman who was nude from the waist down, on her knees, and bent over. According to Sergeant Moses, the Defendant was "just able to get a condom placed on himself and he [was] trying to insert his penis into her vagina." The woman "had

several facial abrasions" that appeared to be "fresh." Sergeant Moses confirmed that Bessie Smith Cultural Center had "No Trespassing" signs posted. Sergeant Moses' camera footage from the incident was admitted into evidence; the no trespassing signs were visible in the recording.

Chattanooga Police Officer Paul Stone testified that he also responded to the scene and arrested the Defendant. Officer Stone recalled hearing someone say "I paid her." Officer Stone did not recall the Defendant's having any money on his person. Officer Stone stated that according to his research, which consisted of driving in the area and looking at online maps, three elementary schools were located within one mile of the Cultural Center.

The Defendant testified that during the summer of 2018, Dale Foote was assigned as his probation officer. When the Defendant reported to Mr. Foote, Mr. Foote gave him a job pamphlet. The Defendant quickly gained employment with Koch Foods. According to the Defendant, he told Mr. Foote that his orientation date with Koch Foods was on the same day as a required victim impact class. Mr. Foote took the note with the orientation date and gave him permission to attend the orientation. The Defendant reported once more to Mr. Foote that he had been hired by Koch Food, and he provided Mr. Foote his work schedule.

The Defendant testified that he attempted to call Mr. Foote sometime in August 2018, but was informed Mr. Foote no longer worked at the probation office. The Defendant stated that he was told he would be given a new probation officer, and he provided the probation office with both his phone number and the phone number of a friend. At this time, the Defendant reported that he lived at the Chattanooga Community Kitchen. The Defendant stated that he never received a return call, contact information for his new probation officer, or a date to report, despite his calling the probation office "two, three, four times" before the end of 2018.

According to the Defendant, on the night of January 4, 2019, he had visited a cousin and was on his way back to the Chattanooga Community Kitchen when he stopped at a Suntrust Bank automatic teller machine and withdrew twenty dollars. Immediately afterward, a young woman approached him and asked if he had money. The woman told the Defendant that she would "supply her services for the money." The Defendant averred that the woman led him behind the Bessie Smith Cultural Center to have consensual sex, for which he paid her the twenty dollars.

On cross-examination, the Defendant affirmed that he was on probation when he patronized prostitution in a public place. He did not recall seeing a "No Trespass" sign at the scene on the night of his arrest. The Defendant maintained that it was the young

woman's fault that he was found nude behind the Bessie Smith Cultural Center and that he would not have "been in that position" had she not approached him.

Following the hearing, the trial court found that the Defendant had violated his probation by committing further criminal offenses and ordered the Defendant to serve the balance of his three-year sentence in confinement. In rendering its decision, the trial court found that a preponderance of the evidence clearly established that the Defendant's conduct would satisfy the elements of public indecency, criminal trespass, and patronizing prostitution within one and a half miles of a school; therefore "substantial evidence exist[ed] to show that the Defendant violated the terms and conditions of his probation through engaging in new criminal conduct." See Tenn. Code Ann. §§ 39-13-514, -517, 39-14-405. The court noted that proof regarding the other alleged grounds for the revocation had not been presented at the hearing. Thereafter, the Defendant filed a timely notice of appeal.

On appeal, the Defendant argues that the trial court abused its discretion by fully revoking his probation and requiring him to serve a three-year sentence in the Tennessee Department of Correction. The Defendant admits that a violation of his probation did occur; however, despite this violation, the Defendant emphasizes that he remained actively employed and made efforts to contact his probation officer. Additionally, he argues that probation revocation "robbed victims of owed restitution and imposed an unnecessary financial burden upon the state's taxpayers." He argues that his probation revocation "runs contrary to the Governor's stated desire to use alternatives to incarceration for low-level, nonviolent offenders." Finally, the Defendant argues that his probation revocation does "not reflect the trial court's expectation that [he] would be released soon after his revocation hearing."

The State asserts that the trial court properly exercised its discretion in revoking the Defendant's probation because "the record supports the trial court's finding that the Defendant committed new criminal offenses and had 'an appalling lack of acceptance of responsibility for his actions.'"

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the authority to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In order to establish a violation of a suspended sentence based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (noting that proof of a conviction is not necessary). The State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App. Oct. 25, 2005) (quoting Harkins, 811 S.W.2d at 83 n.3).

Moreover, in this case, the Defendant admitted to patronizing prostitution. This alone is substantial evidence of record to support the trial court's revocation order. See State v. Michael Emler, No. 01C01-9512-CC-00424, 1996 WL 691018, at *4 (Tenn. Crim. App. Nov. 27, 1996) (holding that where the defendant admits violation of the terms of probation, revocation by the trial court is not arbitrary or capricious). Furthermore, this court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Dannie Brumfield, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002).

Once a trial court has determined that a violation of probation has occurred, the court has the discretionary authority to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate

modified conditions; or (4) extend the defendant's probationary period by up to two years." State v. Brandon L. Brawner, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), -308(c), -310, -311(e); State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999)). The determination of the proper consequences of the probation violation embodies a separate exercise of discretion. State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Sergeant Moses testified that he responded to a burglary alarm at Bessie Smith Cultural Center, where at least two "No Trespassing" signs were posted. Upon hearing screams from a stairwell, Sergeant Moses found the Defendant nude and engaging in a sexual act with a young woman. The Defendant told Sergeant Moses that he had paid the woman for sexual services. In addition, Officer Stone noted the Cultural Center's proximity to three elementary schools and affirmed that he heard someone at the Cultural Center say, "I paid her." Most importantly, the Defendant testified at the revocation hearing that he paid the woman for sexual favors.

We disagree with the Defendant that the trial court abused its discretion by revoking his probation. The Defendant's admission under oath that he engaged in further criminal conduct and other evidence presented at the hearing clearly established that the Defendant was nude, trespassing in a public place, and engaged in a sexual act for which he claimed to have paid prove that he violated the conditions of his release.

The trial court's decision to require that the Defendant serve the original sentence in confinement is likewise reviewed for an abuse of discretion. Although the court noted that the Defendant maintained employment and attempted to keep in contact with his probation officer, the court ultimately decided to require the Defendant to serve his three-year sentence in confinement due to the serious nature of the criminal conduct, the refusal to accept responsibility for his actions, and the recency of the violation after his release from custody. The trial court did not abuse its discretion. The Defendant is not entitled to relief on this basis.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-